NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JEREMIAH J. SALAMON, | : |
| | :    CIV. NO. 23-72 (RMB) |
| Petitioner, | : |
| | : |
| v. | : |
| | : |
| STEVIE KNIGHT, WARDEN | : |
| | : |
| Respondent | : |

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon Petitioner Jeremiah J. Salamon's ("Salamon") petition for writ of habeas corpus under 28 U.S.C. § 2241 (Pet., Docket No. 1), where he challenges the sanctions imposed against him by the Bureau of Prisons ("BOP") after holding a prison disciplinary hearing at the Federal Correctional Institution at Fort Dix New Jersey ("FCI Fort Dix") on September 2, 2020. Salamon initially filed this action as a hybrid civil rights case for injunctive relief and habeas petition under 28 U.S.C. § 2241. *See Salamon v. Knight*, 23-2220 (RMB-AMD) (D.N.J.) (Opinion, Dkt. No. 8.) This Court screened the civil rights complaint and severed Grounds One, Two, Four, Five and Six of the complaint for adjudication in this habeas proceeding. (*Id.*) Respondent filed an answer to the habeas petition, opposing relief. (Answer, Docket No. 9.) Salamon did not file a reply brief. For the reasons discussed below, the Court will deny the habeas petition.

I.   **BACKGROUND**

Salamon is serving a 236-month sentence imposed in the United States District Court, District of Massachusetts on May 25, 2011.  (Declaration of Jonathan Kerr ("Kerr Declaration"), Attach. 1, Dkt. No. 9-1 at 5.)  At the time the answer was filed, Salamon's projected release date, assuming good conduct time, was May 31, 2026.  (*Id.*, Dkt. No. 9-1 at 4.)

II.  **THE DISCIPLINARY PROCEEDINGS**

   A.   **The Incident Report and UDC Hearing**

On the morning of May 27, 2020 at FCI Fort Dix, several inmates told Correctional Counselor L. Kwartin ("Kwartin") that there was a fight in a television room on the first floor of housing unit 5841 at FCI Fort Dix.  (Kerr Decl., Attach. 3, Dkt. No. 9-1 at 26.)  The inmates told Kwartin that inmate S.R., was sent to "medical" because he had "injuries consistent with an assault."  (*Id.*)  Kwartin passed this information on to Operations Lieutenant J. Marcucci ("Marcucci.")  On June 8, 2020, Lieutenant M. Fernandez issued Incident Report No. 3405562, charging Salamon with Fighting with another person, a violation of BOP Code 201.[1]  (*Id.*, Dkt. No. 9-1 at 21.)  The incident report states:

> On Monday, June 8, 2020 at 8:36 AM, an SIS investigation into a fight between inmate [S.R.] and inmate Salamon, Jeremiah Reg. No. 91052-038 was completed. The investigation concluded, based on eye witness accounts, and the statements provided by both inmate [S.R.] and inmate Salamon, inmates [S.R.] and

---

[1] BOP's prohibited acts and available sanctions are found at 28 C.F.R. § 541.3, Table 1.

> Salamon were engaged in a mutually combative physical altercation on May 27, 2020 in the first floor television room of building 5841. Inmate Salamon stated during the investigation he sat down on a bench between inmate [S.R.] and inmate [E.L.] in the television room to speak with inmate [E.L.] when inmate [S.R.] began yelling at him and asking why he had to sit so close to him.
>
> Salamon claims he replied to inmate [S.R.] by telling him he needed to speak with inmate [E.L.] about something. Salamon claimed [S.R.] stood up over him in a threatening manner. Salamon stated he then stood up and struck [S.R.] in the face with a closed fist. Salamon stated [S.R.] was also swinging his fists at Salamon during the altercation and struck him in the left arm with a cane. Inmate [E.L.] was questioned during the investigation and corroborated inmate Salamon's account of the incident.
>
> Inmate [S.R.] was medically assessed and was observed with two lacerations to his eyebrow above his left eye and slight swelling to his left cheek directly below his left eye. No injuries were noted during the medical assessment of Salamon, but he reported a red mark to the back of his left forearm he received during the altercation. Several inmates reported the fight to Unit Team staff in building 5841 which prompted the investigation.

(Kerr Decl., Attach. 3, Dkt. No. 9-1 at 21, § 11.)  The investigator, Lieutenant J. Marcucci, determined that Salamon was properly charged with Code 201, and delivered a copy of the incident report to him on June 8, 2020.  (*Id.* at §§ 14-16 and Dkt. No. 9-1 at 25.)

A hearing was held before the Unit Disciplinary Committee ("UDC") on June 12, 2020.  (*Id.* at §§ 17-21.)  Salamon described the incident with S.R.  Salamon was sitting down and S.R. stood over him and threw the first punch.  Salamon tried

to reason with S.R., but S.R. continued his aggression, and Salamon had to defend himself. (*Id.* at § 17.)

The UDC referred the incident to a Disciplinary Hearing Officer ("DHO") on June 12, 2020, based on the "seriousness of the incident" and the severity of potential sanctions. (Kerr Decl., Attach. 3, Dkt. No. 9-1 at 21, § 19.) (*Id.* at 22-25.) Salamon acknowledged his rights, requested a staff representative and identified inmate E.L. as a witness he wished to call at the DHO hearing. (*Id.* at 22- 24.)

B.   **The DHO Hearing and Report**

At Salamon's hearing before a DHO on September 2, 2020,[2] he acknowledged his understanding of his rights. (Kerr Decl., Attach. 3 at § III(B), Dkt. No. 9-1 at 15.) Salamon's staff representative was present, he had reviewed the information, and he determined that Salamon had been afforded his due process rights before the hearing. (*Id.* at § II) Salamon made a statement:

> I am not guilty . . . I believe the statement provided in the incident report was not accurate. My witness appears to agree with what happened and he gave another statement that is not in the report. I was being assaulted and had no avenue of escape. I had to defend myself. No I did not report to any staff member that I was assaulted.

(*Id.* at § III(B)).

Salamon also submitted a written statement at the hearing. (Kerr Decl., Attach. 3, Dkt. No. 9-1 at 19-20.) In that statement, he claimed that while he was

---

[2] The DHO hearing had been postponed on August 28, 2020 because Salamon's staff representative was not available. (Kerr Decl., Attach. 3, Dkt. No. 9-1 at 17.)

still seated in the television room, [S.R.] stood over him and "punched [him] in the left hand side of [his] forehead with his fist, knocking [his] hat off [his] head, followed by a glancing blow to [his] left eye." To defend himself, Salamon "put his left hand up to the left side of [his] head in an effort to block the oncoming hits" and took his "right arm and braced it across [his] chest] and plowed into [S.R.]," who "fell over." *Id.* S.R. stood up and came at Salamon again, and Salamon "deflected his second attack[] and pushed him away . . . ." When Salamon proceeded to leave the room, [S.R.] pursued him and swung his cane, but Salamon deflected it and left the room. (Kerr Decl., Attach. 3, Dkt. No. 9-1 at 19-20.)

The DHO did not call Salamon's requested witness, E.L., because the incident report stated that E.L. corroborated Salamon's initial account of the incident. (*Id.*, Dkt. No. 9-1 at 15, § III(C)(4)). The DHO considered photographs and medical assessments of Salamon and S.R. (*Id.* at § III(D) and Attach. 4, Dkt. No. 10 (sealed)). The DHO found the evidence reflected "minor injuries" to both inmates "consistent with being involved in a fight…." (*Id. at § III*(D)).

Based on the incident report, the SIS investigation, which included eyewitness accounts, statements by S.R., Salamon, and E.L., photographs, and medical assessments, the DHO determined Salamon committed the prohibited act of Fighting with another person, Code 201. (*Id.* at 16-17, §§ IV-V). The DHO considered Salamon's written statement but concluded that the greater weight of the evidence supported that Salamon was fighting because he "returned the aggression," instead of "trying to remove [himself] from the area." (*Id.* at 17, ¶ V.) The DHO sanctioned

Salamon by disallowing 27 days of good conduct time, imposing 60 days of disciplinary segregation (with the sanction suspended 180 days pending clear conduct), and 180 days loss of visiting privileges because his actions threatened the health, safety, and welfare of himself and others. (Kerr. Decl., Attach 3, Dkt. No. 9-1 at 18, §§ VI-VII.)

### III.   DISCUSSION

#### A.   Exhaustion of Administrative Remedies

Before a federal inmate can seek habeas relief under 28 U.S.C. § 2241, he must ordinarily exhaust his administrative remedies. *Vasquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760-62 (3d Cir. 1996). The judicially imposed exhaustion requirement serves the following purposes: 1) facilitates judicial review by allowing the appropriate agency to develop a factual record and apply its expertise; (2) conserves judicial resources by permitting agencies to grant the relief requested; and (3) fosters administrative autonomy by providing agencies the opportunity to correct their own errors. *Moscato*, 98 F.3d at 761-62. District courts should permit a case to proceed in the absence of exhaustion of administrative remedies if it finds that "prison officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentations, either on a system-wide basis or in the individual case[.]" *Ross v. Blake*, 578 U.S. 632, 648 (2016).

Respondent submits that Salamon did not fully exhaust his administrative remedies. (Kerr Decl. ¶ 5 and Attach 2, Dkt. No. 9-1 at 7-13.) Salamon argues that

two different staff members denied his requests for the necessary administrative remedy form and prevented him from properly exhausting administrative remedies. (Pet., Dkt. No. 1 at 18, Petr's Mem., Dkt. No. 1-1 at 64-73.) Respondent acknowledges that the "failure to provide an inmate with requested grievance forms can . . . excuse an inmate's failure to exhaust administrative remedies." *Ricketts*, [Civ. No. 20-7430 (RBK)], 2023 WL 2859743, at *3 [D.N.J. Apr. 10, 2023] (citing *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003); *Abraham v. Costello*, 816 F. Supp. 2d 430, 435 (D. Del. 2012)). (Answer, Dkt. No. 9 at 16.) However, Respondent argues that Salamon's allegation is unsubstantiated.

Salamon signed his memorandum of law in support of his habeas petition under penalty of perjury. (Petr's Mem., Dkt. No. 1-1 at 79.) In support of his claim that he was deprived of the ability to exhaust BOP administrative remedies, Salamon states the following. On November 5, 2020, he requested a "BP-10" Administrative Remedy Appeal Form from Team Case Manager Bradley Vogt, who told him to get the form from his counselor, and then sent him away. (*Id.* at 67.) On November 6, 2020, he asked Unit Team Counselor Jose Cuevas, the only counselor present that day, for a BP-10 form. (*Id.*) Cuevas told Salamon to live with the DHO's decision and ordered him to leave. (*Id.* at 68.) The only way to obtain the necessary form to begin the administrative appeal of a DHO decision is to request it from staff. (*Id.* at 67, quoting 28 C.F.R. § 542.14(c) ("the inmate shall obtain the appropriate form from CCC staff or institutional staff"); [*see also* § 542.14(d)(2) ("DHO appeals shall be

submitted initially to the Regional Director for the region where the inmate is currently located.")].

Respondent did not submit affidavits from Vogt or Cuevas to contest Salamon's allegations. Therefore, the Court will waive the non-jurisdictional administrative exhaustion requirement and reach the merits of the habeas petition.

B.   **Due Process Standard of Law**

In *Wolff v. McDonnell*, the Supreme Court described the minimum due process protections required before an inmate may lose good-time credits as a sanction for violating a prison rule. 418 U.S. 539, 563-71 (1974). The due process protections include (1) written notice of the charges at least twenty-four hours prior to a hearing; (2) a limited opportunity to call witnesses and present evidence in defense; (3) under certain circumstances, assistance from an inmate representative; (4) a written statement of the evidence relied on by the decisionmaker and reasons for the disciplinary action; and (5) an appearance before an impartial decision-making body. *Wolff*, 418 U.S. at 563–567. The Supreme Court later held that "some evidence" is the standard of review applicable to prison disciplinary hearings. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 454. The standard is met if any evidence in the record could support the conclusion by the tribunal. *Id.* at 455-56. BOP regulations governing prison disciplinary proceedings, 28 C.F.R. §§ 541.1 to 541.8, exceed the minimum due process protections provided in *Wolff*. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994) ("[w]hile the regulations substantially track the procedures outlined in *Wolff*, in some

respects they go beyond what the due process clause itself requires.") (internal citations omitted). The harmless error analysis applies to allegations that BOP violated its own prison disciplinary procedures. *Ancrum v. Holt*, 506 F. App'x 95, 98 (3d Cir. 2012) (per curiam) (citing *Elkin v. Fauver*, 969 F.2d 48, 53 (3d Cir. 1992)).

Under 28 C.F.R. § 541.5, when BOP staff have reason to believe that an inmate committed a prohibited act, staff must prepare an incident report and refer the matter for investigation. After an investigation, the incident report is provided to a Unit Discipline Committee ("UDC") pursuant to 28 C.F.R. § 541.7, for an initial hearing. A DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. § 541.8. The procedures require staff to give inmates advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.8(c). Inmates are entitled to the assistance of a staff representative for the DHO hearing. 28 C.F.R. § 541.8(d). Inmates have the right to be present throughout the DHO hearing, except during deliberation or when institutional security would be jeopardized. 28 C.F.R. § 541.8(e). Inmates are entitled to make a statement in disciplinary hearings, they may present documentary evidence, and they may submit names of witnesses to testify, if reasonably available. 28 C.F.R. § 541.8(f). DHOs must prepare a record of the proceedings sufficient to document: 1) that the inmate was advised of his rights; 2) the DHO's findings, including the specific evidence relied upon and reasons for the sanctions imposed; 4) and the record must be delivered to the inmate. 28 C.F.R. § 541.8(h).

### C. Analysis

#### 1. Due Process Right to a Qualified and Impartial Decisionmaker.

Salamon challenges both the qualifications of the DHO to serve in a judicial capacity, and the DHO's impartiality. First, as to qualifications, Salamon argues that "in order for any agent employed by the government to adjudicate a disciplinary hearing, which may result in the application of punitive measures, such as the loss of good time credit or any other liberty interests, that agent must be a member of the judiciary." (Petr's Mem., Dkt. No. 1-1 at 44.) Salamon is wrong. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556). Instead, due process in this context is satisfied if the decisionmaker was not involved in investigating or prosecuting the prisoner's case. *Redding v. Holt*, 252 F. App'x 488, 491 (3d Cir. 2007) (per curiam) (holding a DHO is not required to be trained in the law)); *Greer v. Hogston*, 288 F. App'x 797, 799 (3d Cir. 2008) (per curiam) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974) ("the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body")). Therefore, Ground Four of the habeas petition is denied.

Salamon also challenges the DHO's partiality in Ground Five of the petition. He asserts that, in general, any staff officer employed by BOP at the same prison as

the inmate who is charged with violating a prohibited act suffers from a conflict of interest. In support of this claim, Salamon alleges that BOP staff have a financial interest in finding prisoners guilty and sanctioning prisoners with loss of good conduct time because federal prisons are funded by the number of inmates in custody. (Petr's Mem., Dkt. No. 1-1 at 51-52.) Additionally, Salamon alleges prison staff members are biased in favor of their co-workers and supervisors because a decision in a prisoner's favor could adversely impact their employment. (*Id.* at 52.) Respondent opposes relief because Salamon has not established bias on the part of the DHO. (Answer, Dkt. No. 9 at 20-21.) Respondent contends there is no evidence DHO Darden had any prior involvement in the incident that was the subject matter of Salamon's prison discipline hearing. (*Id.*)

Prison staff members may serve as impartial decisionmakers in prison disciplinary hearings, in accordance with procedural due process protections, if they were not personally or substantially involved in the underlying charges. *Greer*, 288 F. App'x at 799 (citing 28 C.F.R. § 541.16(b); *see also Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974)). Salamon has not established that DHO Darden suffered from any disqualifying prior involvement in the underlying charge of Code 201, Fighting with another person. Therefore, Ground Five of the habeas petition is denied.

      2.      Due Process Right to Call Witnesses

In Ground Six of the petition, Salamon argues that he was deprived of his due process right to call witnesses in his defense at the DHO hearing. (Petr's Mem., Dkt. No. 1-1 at 57-59.) Salamon first told the investigating officer, M. Fernandez, that he

wished to call as witnesses: inmate E.L.; an inmate with the first or last name Wilson; and other inmate witnesses to the incident to be identified later. Salamon repeated this request to Counselor J. Cuevas. Prior to the DHO hearing, Salamon's staff representative informed Salamon that he had been unable to obtain written witness statements, but Salamon would be able to call the witnesses to testify at the hearing. Thus, before the hearing started, Salamon told DHO Dardin that he wished to call witnesses E.L., "Wilson," and other eyewitnesses who would be identified by E.L. and Wilson. DHO Dardin refused this request without giving a reason. Salamon acknowledges that DHO Dardin later explained, in his DHO report, that he did not permit Salamon to call E.L. as a witness because E.L.'s account was adequately summarized in the incident report. Salamon now offers written statements from three witnesses to the underlying incident, in support of his claim that he was attacked by S.R. and did not fight with him.[3]

Respondent opposes relief on this claim, arguing that the due process right to call witnesses at prison disciplinary hearings is limited and does not require witnesses to appear to present irrelevant or repetitive testimony. (Answer, Dkt. No. 9 at 18-20.) In response to the written statements offered by Salamon in support of his habeas petition, Respondent maintains that E.L.'s statement does not refute the charge that Salamon engaged in a fight. Furthermore, W.G.'s statement supports the

---

[3] *See* Affidavits of E.L., W.G. [Wilson], and D.B. (Exhibits to Petr's Mem., Dkt. No. 9-2 at 7-11). The Affidavits submitted appear to be incomplete. Nonetheless, the Court may determine the petition because habeas courts are not required to examine the entire record, reweigh evidence or make credibility determinations. *Hill*, 472 U.S. 445, 455 (1985).

charge because he said Salamon ran into S.R. and knocked him to the ground. Salamon's own written statement submitted to the DHO identified only E.L. as a witness. Moreover, on the form "Notice of Discipline Hearing Before the DHO," Salamon requested only E.L. as a witness.

The Supreme Court in *Wolff* described the limited due process right to call witnesses and present documentary evidence as follows:

> We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison

> officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments.

*Wolff*, 418 U.S. at 566–67. In determining that E.L. would not be permitted to testify, the DHO relied on the fact that E.L. had corroborated Salamon's description of the incident, as stated in the incident report. Therefore, his testimony would be repetitive. As to other witnesses, Salamon had not identified "Wilson" or any other inmates whom he wished to call at the DHO hearing. Given a prison official's recognized interest in avoiding disruption and interference with swift punishment for prison infractions, the DHO did not violate due process by exercising his discretion to proceed without witness testimony. Finally, for the reasons discussed below, corroboration of Salamon's version of the incident would not have exonerated him from a finding of guilt under the "some evidence" standard of review. *See Pachtinger v. Grondolsky*, 340 F. App'x 774, 776-77 (3d Cir. 2009) (per curiam) (examining whether prisoner was prejudiced by alleged denial of certain evidence at disciplinary proceeding). Therefore, any error in refusing his request to call witnesses was harmless.

### 3.    "Some Evidence" Standard of Review

In Ground One of the petition, Salamon challenges the veracity of the incident report, and alleges BOP's failure to correct the record after he challenged the description of the "fight" in the incident report violated his right to due process. This Court determines, as discussed below, that even if written Salamon's description of

the incident submitted to the DHO had been credited, there remains "some evidence" supporting the DHO's finding of guilt. Thus, the Court denies Ground One of the petition.

The "Statement of Facts" section of Salamon's memorandum in support of his habeas petition, describes the incident with S.R. consistent with Salamon's written statement provided at the DHO hearing. (Petr's Mem., Dkt. No. 1-1 at 8-9, ¶ 1.) In Ground Two of the petition, the gravamen of Salamon's challenge to the DHO's finding of guilt is the DHO did not take into account Salamon's claim of self-defense. (*Id.* at 31-38.) In *Wolff*, the Supreme held that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." This supports the conclusion that self-defense is not a full and complete defense to a charge of Fighting another person, in violation of BOP Code 201. *Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2011) (holding "the DHO was under no constitutional obligation to allow Jones's claim that he was merely defending himself to serve as a complete defense to the charge of assault."); *MacMillan v. Pontesso*, 73 F. App'x 213, 214 (9th Cir. 2003) (noting "that even if MacMillan has a constitutional right to assert self-defense, the fact that he was not permitted to assert that right in whole or in part in response to an alleged violation of Code 201 does not necessarily render Code 201 unconstitutional.") Within the prison environment, a policy that would permit prisoners to use reasonable force in self-defense when another inmate initiated a fight could result in an escalation of

violence and pose a serious challenge to maintaining the safety of inmates and staff. This is reflected in how "fight" is defined by BOP.

Here, the DHO noted that "a 'fight' is a hostile physical or verbal encounter between two or more persons." (Kerr Decl., Attach. 3, Dkt. No. 9-1 at 18.) Salamon's own written statement, submitted to the DHO to contest the facts in the incident report, states that Salamon used his arm to plow into S.R., and when S.R. fell over, Salamon taunted him by saying "Did you get that out of your system? Are you done? Have you had enough?" When S.R. attacked Salamon a second time, Salamon pushed S.R. Even adopting Salamon's description of the incident, there was sufficient evidence upon which the DHO could find him guilty of Fighting another person, in violation of Code 201. *See Fleck v. Fed. Corr. Inst.*, 490 F. App'x 418, 419 (3d Cir. 2012) (per curiam) (holding some evidence supported DHO's finding of guilt under Code 201 where prisoner admitted involvement in verbal altercation with another inmate). Therefore, the Court denies Grounds One and Two of the petition.

IV. **CONCLUSION**

Salamon received all due process protections required for prison disciplinary hearings, and the DHO's finding of guilt was supported by some evidence. Furthermore, sanctions that fall within the maximum authorized for the prohibited act under 28 C.F.R. § 541.3, Table 1 are constitutionally permissible. *Millard v. Hufford*, 415 F. App'x 348, 350 (3d Cir. 2011) (per curiam). Therefore, the Court denies the petition for writ of habeas corpus under 28 U.S.C. § 2241.

An appropriate Order follows.

Date: <u>March 5, 2024</u>

                                            <u>s/Renée Marie Bumb</u>
                                            RENÉE MARIE BUMB
                                            CHIEF UNITED STATES DISTRICT JUDGE